UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

HOWARD YOST, individually and as next of )
Friend K.Y., and KEATON YOST, )
)
            Plaintiffs, )
)
v. )           No. 2:18-CV-138-DCP
)
WAYNE WILHOIT, et al., )
)
            Defendants. )

**<u>MEMORANDUM AND ORDER</u>**

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the

Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings,

including entry of judgment [Doc. 20].

Now before the Court are the following Motions: (1) Defendants' Motion to Dismiss for

Failure to Prosecute ("Motion to Dismiss") [Doc. 88], (2) Plaintiffs' Motion to Modify Scheduling

Order and Motion for Extension of Time to Respond to Motion for Summary Judgment ("Motion

to Modify") [Doc. 91], and (3) Plaintiffs' Motion to Dismiss, Set Aside and/or Stay Defendants'

Motion to Dismiss for Failure to Prosecute; Motion for Status Conference, and Motion for Entry

of Revised Scheduling Order ("Motion for Entry of Revised Scheduling Order") [Doc. 97]. In

addition, the parties filed briefs [Docs. 102 and 103] relating to Plaintiffs' oral request during a

telephonic conference to take discovery prior to responding to Defendants' Motion for Summary

Judgment. Accordingly, for the reasons set forth below, the Court **DENIES** Defendants' Motion

to Dismiss [**Doc. 88**], **GRANTS** Plaintiffs' Motion to Modify [**Doc. 91**], and **GRANTS IN PART**

Plaintiffs' Motion for Entry of Revised Scheduling Order [**Doc. 97**].

# I.     BACKGROUND

The Court will begin with the allegations in the Complaint and then turn to the procedural history of this case.

## A.     Complaint

This lawsuit was filed on August 20, 2018, by Plaintiff Howard Yost, individually and as next of friend of K.Y., and Keaton Yost.  [Doc. 1].  The Complaint primarily alleges violations of 42 U.S.C. § 1983 against Defendants Wayne Wilhoit ("Wilhoit"); Pat Hankins ("Hankins"), in his official capacity as Sheriff of Greene County, Tennessee; David McLain ("McLain"), in his official capacity as Director of Schools for Greene County, Tennessee; Greene County Commission ("Commission"); Greene County Board of Education ("Board"); and Greene County, Tennessee ("County").  [Doc. 1 at 1].[1]

Specifically, the Complaint alleges that on August 24, 2017, Plaintiff Howard Yost drove his sons, K.Y. and Keaton Yost, to school.  [*Id.* at 3].  As they entered the parking lot of the school, Plaintiffs decided that Plaintiff Keaton Yost should keep the vehicle at school, rather than Plaintiff Howard Yost dropping the children off.  [*Id.*].  Plaintiffs decided to return home to make the change because they lived nearby.  [*Id.*].  When they arrived home, Plaintiff Howard Yost exited the vehicle, Plaintiff Keaton Yost assumed control of the vehicle, and Plaintiff K.Y. moved from the back to the front passenger seat.  [*Id.* at 4].

The Complaint states that as Plaintiff Keaton Yost was traveling back to school, he observed a Greene County Sheriff's cruiser ("Cruiser") stopped at a stop sign, preparing to enter the highway.  [*Id.*].  Plaintiff Keaton Yost slowed to a stop to wait for the Cruiser to proceed, and

---

[1] On January 25, 2019, the parties stipulated to the dismissal of the individual capacity claims against Pat Hankins and David McLain. [Doc. 32].

2

a moment later, without any observable cause, the blue lights on the Cruiser activated. [*Id.*]. Plaintiffs state that the Cruiser made an erratic and uncontrolled spin, stopping just short of crashing into the driver side of Plaintiffs' vehicle. [*Id.*]. Upon recognition that the blue lights were intended for Plaintiff Keaton Yost, he instructed his brother, Plaintiff. K.Y., to contact their father and let him know that they were being pulled over. [*Id.*].

The Complaint alleges that Defendant Wilhoit jumped out of the Cruiser, drew his service weapon, and advanced toward the driver's side door where Plaintiff Keaton Yost remained seated. [*Id.*]. Defendant Wilhoit shouted expletives at the boys, including a statement that they were under arrest as Defendant Wilhoit proceeded forward. [*Id.*]. Defendant Wilhoit opened the driver's side door and grabbed Plaintiff Keaton Yost by the arm and dragged him from the vehicle. [*Id.*]. Plaintiffs allege that Defendant Wilhoit was holding his weapon in his left hand. [*Id.*]. Defendant Wilhoit then holstered his weapon and used both hands to shove Plaintiff Keaton Yost into the side of the vehicle to handcuff him. [*Id.* at 4-5]. Plaintiff Keaton Yost told Defendant Wilhoit that the handcuffs were too tight and that he was in pain, but Defendant Wilhoit did not adjust the handcuffs. [*Id.* at 5]. Defendant Wilhoit tossed Plaintiff Keaton Yost to the ground on his stomach, where he remained until the arrival of other officers, who rendered assistance by removing the handcuffs and helping him off the ground. [*Id.*].

The Complaint alleges that Defendant Wilhoit then forcefully opened the passenger side door, grabbed Plaintiff K.Y. by his arm, and pulled him from the vehicle onto the hood of the Cruiser. [*Id.*]. The Complaint states that Defendant Wilhoit also pushed Plaintiff K.Y.'s face down and handcuffed him too tightly, causing pain. [*Id.*]. Plaintiff K.Y. asked why he and Plaintiff Keaton Yost were being arrested, but Defendant Wilhoit would not respond. [*Id.*]. Later, Tusculum City Police Chief Danny Greene ("Chief Greene") arrived and assisted Plaintiff K.Y.

3

by taking him into custody away from Defendant Wilhoit. [*Id.*]. Plaintiffs state that other officers arrived and attempted to gather the facts and circumstances of the situation. [*Id.*].

The Complaint avers that Plaintiff Howard Yost arrived and observed that the road was completely blocked by the Cruiser, Plaintiffs' vehicle, and two other county sheriff cruisers. [*Id.*]. Plaintiff Howard Yost saw Plaintiff Keaton Yost on the ground crying and begging for help and observed Plaintiff K.Y. in the back of Chief Greene's vehicle. [*Id.*]. Plaintiff Howard Yost asked why his children were being arrested, and Defendant Wilhoit replied it was none of his "f******* business." [*Id.*]. Chief Greene learned that Defendant Wilhoit had said to Plaintiff Keaton Yost that he (Plaintiff Keaton Yost) was driving recklessly. [*Id.*]. Plaintiff Howard Yost told Chief Greene and Defendant Wilhoit that he had been driving earlier that morning and that it could not have been his vehicle that Defendant Wilhoit observed because Plaintiff Howard Yost was not driving recklessly. [*Id.* at 5-6]. Defendant Wilhoit began screaming at Plaintiff Howard Yost, "f****** liar" and told Plaintiff Howard Yost that if he lied again, Defendant Wilhoit would put him "under the jail." [*Id.*]. Plaintiff Howard Yost repeated that he had followed traffic in a normal fashion and that at no point did he ever see blue lights or even observe a police cruiser. [*Id.*].

The Complaint states that Chief Greene tried to calm Defendant Wilhoit down without success. [*Id.* at 6]. Chief Greene suggested that a citation for speeding could remedy the issue, but Defendant Wilhoit persisted and instructed another deputy to arrest Plaintiff Howard Yost. [*Id.*]. Plaintiff Howard Yost questioned how he could be arrested for speeding and what other charges he may be facing, but Defendant Wilhoit refused to answer. [*Id.*]. Plaintiff Howard Yost was transported to jail and remained there for several hours until he could post bond. [*Id.*]. Only after Plaintiff Howard Yost's release was he able to discern that Defendant Wilhoit had obtained

4

an arrest warrant after he had been jailed for felony evading and reckless endangerment. [*Id.*]. The Complaint states that those charges were later dismissed by the State. [*Id.*].

The Complaint alleges that Plaintiff Howard Yost's arrest was publicized in the local newspaper, and he was required to comply with bond conditions from the date of his arrest on August 24, 2017, until the charges were dismissed on October 30, 2017. [*Id.*]. As a result, Plaintiff Howard Yost lost his job, and the charges caused him to incur attorney's fees and expenses, including the money he used to post bond. [*Id.*]. The Complaint states that Plaintiff Howard Yost has not been able to secure compatible employment since his arrest. [*Id.*]. The Complaint further alleges that Defendant Wilhoit remains employed by the Greene County Sheriff's Department as a School Resource Officer ("SRO") and that Plaintiff Keaton Yost changed schools because he was subjected to Defendant Wilhoit's persistent observations. [*Id.* at 6-7].

The Complaint states that Defendant Wilhoit was hired as a security officer by the Board in August 2015, but he had not received basic law enforcement officer training, was not P.O.S.T. certified, and he did not have any experience as a patrol officer at the time he was hired as a security officer. [*Id.* at 7]. The Complaint further states that the Commission was informed in August 2016 that the hiring of untrained and uncertified security officers is contrary to Tennessee law and potentially felonious. [*Id.*].

Based on the foregoing, Plaintiffs allege unreasonable search and seizure; excessive force; unreasonable prosecutorial seizure; and deliberate indifference to policies, practices, customs, training, and supervision in violation of 42 U.S.C. § 1983. Plaintiffs also allege state law claims, including assault, battery, intentional infliction of emotional distress, and false arrest.

5

B.       **Procedural History**

As mentioned above, the Complaint in this case was filed on August 20, 2018, and Plaintiffs were originally represented by Attorney Trujillo.  On January 27, 2020, the parties participated in an informal discovery dispute conference with the undersigned.  Specifically, Defendants complained that they had not received Plaintiffs' discovery responses in a timely fashion.  The parties resolved the issue during the informal discovery dispute conference, and the Court entered minutes so stating.  [Doc. 41].

Subsequently, Defendants filed a motion to dismiss for lack of prosecution, or in the alternative, for sanctions because Plaintiffs failed to attend their depositions.  [Doc. 48].  In response to Defendants' motion, Plaintiffs primarily argued that the depositions were set for March 2020, which was when the normal course of business was no longer applicable given COVID-19 concerns.  The Court denied Defendants' request to dismiss the case but awarded Defendants their costs and attorney's fees incurred for appearing for the depositions and preparing and filing the notices to depose.  [Doc. 55].  The Court reasoned that Defendants made multiple attempts to schedule Plaintiffs' depositions by agreement, and when those attempts were unsuccessful, Defendants were forced to notice the depositions.  [*Id.* at 5].  The Court also considered Plaintiffs' reason for not attending the depositions (i.e., the normal course of business was disturbed by COVID-19), but the undersigned found that it did not excuse their conduct considering that they did not communicate with defense counsel, or seek relief from the depositions with the Court.  [*Id.*].  The Court ordered the parties to meet and confer to determine whether they could agree to a reasonable amount of costs and attorney's fees.  [*Id.* at 7].

The parties agreed to an award of $1,394.20.  [Doc. 62].  Attorney Trujillo issued a check that was dishonored for insufficient funds.  [Doc. 78].  Defendants filed a motion requesting that

the Court enforce its previous Order [Doc. 61].[2]  In response to Defendants' motion, Plaintiffs stated that Attorney Trujillo had recently experienced a series of family tragedies, including during the week the check was issued, and inadvertently failed to transfer funds from her personal account to her firm operating account.  [Doc. 78 at 2].  The parties agreed to an additional sanction against Plaintiffs for the costs Defendants incurred for filing the motion.  [*Id.*].  The Court granted Defendants' motion on September 24, 2020, finding Plaintiffs and their counsel jointly liable for the sanctions and ordering that the amount be paid by a cashier's check.  [*Id.* at 3].  The Court warned Plaintiffs that the failure to comply with the Order could result in the imposition of additional sanctions, up to and including dismissal of the case.  [*Id.*].

On October 30, 2020, Defendants moved for summary judgment.  [Doc. 81].  Plaintiffs' response was due on November 20, 2020, but Plaintiffs did not respond to the motion for summary judgment.  On January 29, 2021, Defendants filed a status report [Doc. 84] pursuant to the Scheduling Order in this case.  Defendants noted in their status report that the Scheduling Order required the parties to file a joint status report, but their attempts to contact Plaintiffs' counsel were unsuccessful. [*Id*. at 1].  On February 5, 2021, the Court ordered Plaintiffs to show cause on or before February 12, 2021, as to why their case should not be dismissed for failure to prosecute. [Doc. 85].  The Court warned Plaintiffs that the failure to respond would result in the dismissal of their action.  [*Id.*].

Plaintiffs filed a response [Doc. 86], explaining that Attorney Trujillo had a series of family tragedies that temporarily prevented her from being able to proceed in this case.  Attorney Trujillo contacted Attorney Justice, who agreed to handle the depositions and take the case over until

---

[2] While the parties were litigating this issue, on September 2, 2020, Attorney Scott Justice filed a Notice of Appearance on behalf of Plaintiffs.  [Doc. 67]

Attorney Trujillo was able to resume working or until the case concluded at trial. The response explained that Attorney Justice began having health issues in November 2020 that prevented him from working. Attorney Justice stopped taking cases and with the help of his family, began informing current clients that they needed to retain new counsel. Plaintiffs' names were not included in Attorney Justice's client database because he was representing Plaintiffs pro bono. As a result, no one contacted Plaintiffs about the need to retain new counsel. The Response states that Plaintiff Howard Yost contacted Attorney Trujillo about the February 5 show cause order. The Response further states that Attorney Trujillo was not sure whether she could resume her practice, but Attorney Justice could not. [*Id.*].

On February 16, 2021, Defendants filed the instant Motion to Dismiss. [Doc. 88]. The following day, the Court ordered the parties to attend a telephonic status conference on February 19, 2021, and further ordered that Attorney Trujillo, Attorney Justice, and Plaintiffs attend the hearing. [Doc. 89]. On the morning of the February 19 telephonic status conference, Plaintiffs filed the Motion to Modify [Doc. 91], and both Plaintiffs' attorneys moved to withdraw. [Doc. 95].

During the telephonic status conference, the Court permitted Attorneys Justice and Trujillo to withdraw from this matter given their personal issues and health concerns and because Plaintiffs consented to their withdrawal. [Doc. 96].[3] The Court granted Plaintiffs thirty (30) days to retain new counsel. [*Id.* at 2-3]. The Court also cancelled the March 30, 2021 trial date, given the procedural posture of the case and the ongoing concerns relating to the COVID-19 pandemic.

---

[3] During the telephonic conference, Plaintiff Howard Yost stated that Plaintiff K.Y. is no longer a minor. [Doc. 96 at 3].

On March 20, 2021, Attorney Francis Santore filed the Motion for Entry of Revised Scheduling Order [Doc. 97] and noted that he was making an appearance on behalf of Plaintiffs. On March 22, 2021, Attorney Edward Kershaw also filed a Notice of Appearance [Doc. 98] on behalf of Plaintiffs.

Later, on April 14, 2021, the Court held a telephonic status conference with the parties, wherein Plaintiffs indicated that they would need discovery in order to respond to Defendants' motion for summary judgment. [Doc. 101 at 1]. In addition, Plaintiffs stated that some Defendants may need to be dismissed from this action. [*Id.*]. Defendants objected to the parties taking any discovery. Finally, the parties generally discussed scheduling a trial at the end of 2021. [*Id.*]. The Court directed the parties to discuss Plaintiffs' request for discovery, the potential dismissal of certain Defendants, and potential trial dates. [*Id.*]. The Court reset the status conference for April 28, 2021. [*Id.*].

During the April 28 status conference, Plaintiffs maintained that in order to respond to Defendants' motion for summary judgment, they needed Defendant Wilhoit's deposition and a deposition of a non-party witness. [Id. at 2]. Defendants objected to any discovery, arguing that they are protected from discovery because they raised qualified immunity in their motion for summary judgment. [*Id.*]. The parties reported that they had not reached an agreement on dismissing any Defendants, but their conversations had not concluded. [*Id.*]. The Court ordered Plaintiffs to file a brief to address (1) whether limited discovery is permissible given that Defendants have raised qualified immunity, and (2) why the two proposed depositions are necessary to respond to Defendants' Motion for Summary Judgment. [*Id.*]. Finally, the Court reset the trial to December 7, 2021. [*Id.*].

9

II.    **ANALYSIS**

The Court has considered the history of this case and the parties' positions on the various Motions.  Accordingly, for the reasons explained below, the Court **DENIES** Defendants' Motion to Dismiss [**Doc. 88**], **GRANTS** Plaintiffs' Motion to Modify [**Doc. 91**], and **GRANTS IN PART** Plaintiffs' Motion for Entry of Revised Scheduling Order [**Doc. 97**].

A.    **Defendants' Motion to Dismiss**

Defendants seek [Doc. 88] to dismiss this case, emphasizing the procedural posture as outlined above.  Defendants argue that Plaintiffs have repeatedly failed to comply with the rules and the orders of the Court.  In addition, Defendants argue that they have been forced to expend unnecessary legal fees and other expenses in relation to the deficiencies in Plaintiffs' prosecution. Further, Defendants state that the Court has repeatedly warned Plaintiffs that the failure to act could lead to dismissal.  Finally, Defendants state that Plaintiffs have already been sanctioned on two occasions and that there are no other appropriate sanctions left except dismissing this case.

Plaintiffs respond [Doc. 92] in opposition to the Motion.  Plaintiffs state that with respect to the discovery dispute in January 2020, it was resolved by agreement and that Attorney Trujillo provided her personal cell phone number to defense counsel because she was working from home while taking care of her severely ill mother.  The Response states that defense counsel did not attempt to contact Attorney Trujillo on her personal cell phone.  Further, the Response states that in March 2020, Attorney Trujillo contracted norovirus and was incapacitated for nearly a week. When she returned, Attorney Trujillo began rescheduling and processing the litigation calendar in light of the state court shutdowns occurring at this time.

Further, the Response states that given the risks with COVID-19, Attorney Trujillo's mother had to disengage her private nurse, and Attorney Trujillo became her mother's primary

10

caretaker, in addition to educating her youngest child, who was not in school because of COVID-19.  In April 2020, Attorney Trujillo's mother suffered another stroke and was hospitalized until May 12, 2020, when she was transferred to a nursing home that would not allow visitors due to COVID-19.  Attorney Trujillo was aware that this was likely the last time that she would see her mother.  Attorney Trujillo states that despite this personal difficulty, she responded to Defendants' discovery requests on May 15, 2020, and communicated with defense counsel regarding the payment of attorney's fees on June 2, 2020—the day that her mother died.

The Response continues that on June 21, 2020, Attorney Trujillo's close extended family member (i.e., her son-in-law's sister) was involved in a horrific car accident that left the family member in a coma.  The Response states that this was the same time that Attorney Trujillo forgot to transfer funds from her personal account to the firm account to cover the attorney's fees check.  In addition, the following month, Attorney Trujillo's daughter was admitted to the hospital for labor and delivery but experienced serious complications.  A few days later, Attorney Trujillo's son-in-law was involved in a serious accident, where he remained in a coma for thirty-nine (39) days.  The son-in-law was later transferred to the Shepard Center in Atlanta, Georgia, where his sister was also a patient.  The son-in-law emerged from his coma, but he suffered a traumatic brain injury, and currently, does not have memories before September 2020.  Attorney Trujillo cared for her daughter and her grandchildren during this time, which is when Attorney Trujillo determined that she was not able to manage this case.   Further, Attorney Trujillo states that in December 2020, she contracted COVID-19, was severely ill, and her symptoms lingered for weeks.

Defendants request dismissal under Federal Rule of Civil Procedure 41(b), which states, "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may

move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). In determining whether dismissal for failure to prosecute is appropriate, courts examine four factors as follows:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999) (citing *Stough v. Mayville Community Sch.,* 138 F.3d 612, 615 (6th Cir. 1998)). "Although typically none of the factors is outcome dispositive, it is said that a case is properly dismissed by the district court where there is a clear record of delay or contumacious conduct." *Id.*

The Court has carefully considered the above factors and declines to dismiss this case. Specifically, the Court has considered the actions, or lack thereof, as follows: (1) Plaintiffs' failure to attend their depositions in March 2022, (2) Attorney Trujillo providing a check to defense counsel that did not have sufficient funds, (3) Plaintiffs' failure to respond to Defendants' Motion for Summary Judgment, and (4) Plaintiffs' failure to file a joint status report as required pursuant to the Scheduling Order. Despite such conduct, in light of the reasons that Attorney Trujillo provided in the Response, the Court finds dismissal unwarranted.

The Court agrees with Defendants that Plaintiffs' conduct in this case has not been ideal. The Court also acknowledges that 2020 was a difficult year for most people. The global pandemic forced the world into unprecedented circumstances, and it appears to the Court that Plaintiffs' former counsel not only had to navigate these unprecedented circumstances, but, at the same time, experienced a series of unfortunate events. It is within this lens that the Court considers the above factors.

With respect to the first factor (i.e., willfulness, bad faith, or fault), the Court finds that this factor weighs against dismissing this case. Specifically, the Court does not find willfulness, bad faith, or fault. Instead, the Court finds that Plaintiffs' former attorneys both experienced unexpected and unfortunate circumstances. When Attorney Trujillo realized she could not manage the case alone, she asked another attorney, Attorney Justice, for assistance. Attorney Justice filed a Notice of Appearance in September 2020. Shortly thereafter, however, Attorney Justice experienced a health issue in November 2020, which prevented him from continuing his law practice. Plaintiffs were not notified, and therefore, did not seek new counsel. Accordingly, the Court finds that this factor does not weigh in favor of dismissing this case.

Second, with respect to prejudice, Defendants assert that they have expended attorney's fees to resolve Plaintiffs' deficiencies. The Court does not find the expenditure of attorney's fees in this case constitutes the type of prejudice that would warrant dismissal, especially when the Court has awarded Defendants their attorney's fees for having to bring such matters to the Court's attention. Accordingly, the Court finds that this factor does not weigh in favor of dismissal.

With respect to the third factor (i.e., whether the party has been warned), the Court has warned Plaintiffs that the failure to comply with certain orders would result in dismissal. *See* [Doc. 78] (directing Plaintiffs to pay Defendants' attorney fees and failure to do so could result in dismissal) and [Doc. 86] (stating that the failure to respond to the order to show cause is grounds for dismissal). Although the Court has not explicitly warned Plaintiffs that the failure to cooperate with deadlines and/or discovery could lead to dismissal, the Court finds that this factor weighs in favor of dismissal given the previous admonishments. Finally, the final factor (i.e., whether less drastic sanctions were imposed), the Court finds this factor weighs in favor of dismissal as the Court has previously imposed less drastic sanctions in the form of attorney's fees.

Given that two factors weigh in favor of dismissal and two factors weigh against dismissal, the Court has taken into consideration the entire circumstances of this case, including the procedural history that led Defendants to file their instant request. As previously explained, Plaintiffs' former attorneys experienced personal issues that affected their ability to properly prosecute this action. Taking those issues into account, along with the unprecedented circumstances of 2020 and this Court's preference of resolving cases on the merits, the Court declines to dismiss this action. Accordingly, Defendants' Motion to Dismiss [**Doc. 88**] is **DENIED**.

### B. Motion to Modify Scheduling Order and Motion for Extension of Time to Respond to Motion for Summary Judgment

Plaintiffs seek to continue the trial date, and they request an extension to respond to the Defendants' motion for summary judgment, highlighting the reasons discussed above (i.e., former counsels' personal issues).

The Court has already continued the trial in this matter in light of the procedural posture and because the trial was set for March 30, 2021—an uncertain time in light of the COVID-19 pandemic. With respect to Plaintiffs' request to extend the time for responding to the motion for summary judgment, the Court finds this request well taken.

Specifically, Federal Rule of Civil Rule 6(b) states as follows:

> (1) In General. When an act may or must be done within a specific time, the court may, for good cause, extend the time:

> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

The Court has discretion to determine whether a party failed to act because of excusable neglect. *La Bamba Licensing, LLC v. La Bamba Authentic Mexican Cuisine, Inc.*, No. 3:16-CV-527-CRS, 2017 WL 472093, at *2 (W.D. Ky. Feb. 3, 2017) (citing *Nafziger v. McDermott Int'l,*

14

*Inc.*, 467 F.3d 514, 522 (6th Cir. 2006)) ("We review a district court's determination of excusable neglect, or lack thereof, under the abuse-of-discretion standard.") (citations omitted). In determining whether excusable neglect exists, courts balance what are commonly referred to as the "*Pioneer"* factors as follows:

> (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith.

*Nafziger*, 467 F.3d at 522 (citing *Pioneer Inv. Servs Col v. Brunswick Assoc., Ltd. P'Ship*, 507 U.S. 380, 395 (1993)).[4] The Sixth Circuit has stated, however, that the "*Pioneer* factors do not carry equal weight; the excuse given for the filing must have the greatest import." *Proctor v. N. Lakes Cmty. Mental Health*, 560 F. App'x 453, 459 (6th Cir. 2014) (quoting *United States v. Munoz*, 605 F.3d 359, 372 (6th Cir. 2010)).

The Court has weighed the above factors and finds an extension warranted. The Court finds that the first two factors weigh in favor of denying the extension. Specifically, the Court finds that Defendants will be prejudiced because they moved for summary judgment in a timely manner and believed that the Motion was unopposed. *See* E.D. Tenn. L.R. 7.2 ("Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought."); *Wimbush v. Wyeth*, 619 F.3d 632, 636 (6th Cir. 2010) ("When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate.").

Second, the Court finds that the delay is significant. Defendants moved for summary

---

[4] "Although *Pioneer* arose from a bankruptcy proceeding, its discussion of excusable neglect also applies to Federal Rule of Civil Procedure 6(b)*." Howard v. Nationwide Prop. & Cas. Ins. Co.,* 306 F. App'x 265, 267 (6th Cir. 2009) (other citations omitted).

15

judgment on October 30, 2020, meaning Plaintiffs' response was due on November 20, 2020. Plaintiffs' request for an extension was filed on February 19, 2021, approximately three months after the deadline had expired. Accordingly, the Court finds the three-month delay significant.

The Court finds that the other factors weigh in favor of Plaintiffs' request. Here, the reason for the delay constitutes excusable neglect. As outlined above, when the response became due, Attorney Justice began having health issues—so much so that he stopped practicing law for the time being. Further, Attorney Trujillo had also experienced significant personal issues and health concerns. *In re Mizisin,* 165 B.R. 834, 835 (Bankr. N.D. Ohio 1994) ("Rather, excusable neglect includes sudden death, disability or illness of counsel or the party or unusual delay in the mails.") (citing *Evans v. Jones,* 366 F.2d 772 (4th Cir. 1966)). Based on the unfortunate series of events, the Court also finds that the delay was not within Plaintiffs' reasonable control and that there are no allegations of bad faith. *See Matter of Smithland Towing & Constr., LLC*, No. 5:18-CV-113-TBR, 2019 WL 2517583, at *2 (W.D. Ky. June 17, 2019) ("However, the Supreme Court further noted that the entire concept of "excusable neglect" is an elastic one, indicating that the trial court should use the term as applied to the specific facts of each case and should reach an equitable result therefrom."). Accordingly, the Court finds an extension warranted, and the Motion to Modify Scheduling Order [**Doc. 91**] is **GRANTED**.

As previously noted, during the last telephone conference, Plaintiffs stated that they needed discovery to respond to Defendants' motion for summary judgment. Specifically, Plaintiffs requested Defendant Wilhoit's deposition and a deposition of a non-party witness. [Doc. 101 at 2]. The Court ordered the parties to address whether limited discovery is permissible given that Defendants have raised qualified immunity and why Plaintiffs' two proposed depositions are necessary.

16

In their brief [Doc. 102], Plaintiffs explain the procedural history of this case, in addition to the holdings of several cases alleging § 1983 violations. Plaintiffs state that Defendants' motion for summary judgment does not rely solely on qualified immunity, noting Defendants' argument that Plaintiffs have not established liability under *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Plaintiffs argue that the policies and procedures of Greene County, Tennessee, and the Greene County Sheriff's Department are relevant, in addition to Defendant Wilhoit's training. Plaintiffs cite to Rule 56(d) and state that they need the following depositions: (1) Defendant Wilhoit, as to his training and the facts and circumstances of the event in question, (2) Defendant Wilhoit's training supervisor and/or designated representative of the Sheriff's Department, as to the training, policies, etc., of the Greene County Sheriff's Department, pursuant to *Monell*, and (3) Chief Greene, the Tusculum Police Chief, who gave directions to Defendant Wilhoit on site regarding how to end the situation.

Defendants respond [Doc. 103] that limited discovery should be denied. Defendants argue that all deadlines have expired, and Plaintiffs never took any depositions. Defendants state that Plaintiffs cite to *Pierson v. Ray*, 586 U.S. 547 (1967), and although it is unclear why, Plaintiffs appear to claim that Defendant Wilhoit did not have probable cause to make an arrest. Defendants argue, however, that Plaintiffs' argument is perplexing because Defendant Wilhoit only arrested Plaintiff Howard Yost, and he pled guilty to speeding in a school zone. Defendants assert that given that Plaintiff Howard Yost pled guilty, there is no reason to take Defendant Wilhoit or Chief Greene's deposition. Further, Defendants assert that neither the training and supervision of Defendant Wilhoit, nor the policies and procedures of the County, play a role in the qualified immunity analysis. Defendants state that it is Defendant Wilhoit's conduct that matters.

Defendants assert that a defendant pleading qualified immunity is entitled to dismissal before commencement of discovery. Defendants state that the Sixth Circuit recently issued a decision noting that qualified immunity is a limited entitlement not to stand or face other burdens of litigation. Defendants further argue that district courts within this Circuit have declined to permit additional discovery under Rule 56(d) where the discovery deadline has expired and where qualified immunity has been property raised. Defendants contend that Defendant Wilhoit has already responded to interrogatories, a request for production of documents, and a request for admission, all which he received before he moved for summary judgment.

In addition, Defendants state that it is not clear why the deposition of Chief Greene is necessary given that he is a law enforcement official not associated with Greene County, and therefore, is not familiar with the County's policies and procedures. With respect to Plaintiffs' request for a third deposition, Defendants state that training, supervision, or other issues related to the County does not have any merit on the qualified immunity analysis.

The parties' arguments have presented three questions before the Court: (1) whether discovery outside the deadline should be permitted, (2) if so, should discovery proceed in light of Defendants' qualified immunity defense, and (3) if so, what specific discovery should be taken.

After considering the history in this case and reviewing the parties' current filings, the Court declines to reopen discovery in this matter. The parties have had several years to complete discovery in this case. Further, some discovery has been taken, although Plaintiffs have not explained what specific discovery they possess. For instance, as Defendants explain, they have submitted their initial disclosures to Plaintiffs and Defendant Wilhoit responded to Plaintiffs' Interrogatories, Request for Production of Documents, and Request for Admission. [Doc. 103-1]. Further, the Court finds that reopening discovery at this time would be highly prejudicial to

Defendants, who actively participated in this case and filed a Motion for Summary Judgment, which relies on the discovery that the parties have already taken.

The Court agrees, and the parties do not appear to dispute, that even when qualified immunity is asserted, limited discovery is permissible to frame the issues. Defendants' Motion for Summary Judgment relies, in part, on qualified immunity, so the undersigned has considered allowing such limited discovery to frame the issues. The Court has reviewed Plaintiffs' brief and Declaration Pursuant to Rule 56(d) [Doc. 102], but the undersigned finds that Plaintiffs have not met their burden in explaining the additional discovery that needs to be taken to frame the qualified immunity issues.

Specifically, under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). "Typically, when the parties have no opportunity for discovery, denying the [Rule 56(d)] motion and ruling on a summary judgment motion is likely to be an abuse of discretion." *Bowers v. Ophthalmology Grp. LLP*, 648 F. App'x 573, 580 (6th Cir. 2016) (other citations omitted). "Even if there has been no discovery, however, summary judgment may nonetheless be appropriate . . . if further discovery would not have changed the legal and factual deficiencies." *Id.* (other citations omitted). Further, courts have explained that "Rule 56 also requires that "a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information.'" *Williams v. Goodyear Tire & Rubber Co.*, No. 11-2035-STA, 2012 WL 1228860, at *2 (W.D. Tenn. Apr. 11, 2012) (quoting *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000)).

19

In the instant matter, Plaintiffs state that they need the following depositions: (1) Defendant Wilhoit, as to his training and the facts and circumstances of the event in question, (2) Defendant Wilhoit's training supervisor and/or a designated representative of the Sheriff's Department, as to the training, policies, etc., of the Greene County Sheriff's Department, pursuant to *Monell*, and (3) Officer Greene, who gave directions to Defendant Wilhoit on site regarding how to end the situation. Although Plaintiffs rely on Rule 56(d), they do not explain what material facts they hope to uncover in taking the above depositions. "The Sixth Circuit has held that it is not an abuse of discretion for the district court to deny the Rule 56 request for discovery when the party "makes only general and conclusory statements [in its affidavit] regarding the need for more discovery and does not show how an extension of time would have allowed information related to the truth or falsity of the [claim] to be discovered." *Id.* (quoting *Ironside v. Simi Valley Hosp.,* 188 F.3d 350, 354 (6th Cir.1999)).

By way of illustration only, the Complaint alleges that Defendant Wilhoit used excessive force against Plaintiff K.Y. [Doc. 1 at 13-18]. As part of the excessive force allegations, Plaintiffs allege Defendant Wilhoit drew his service weapon on Plaintiff Keaton and Plaintiff K.Y. [Doc. 1 at 4]. In addition, Plaintiffs allege that Defendant Wilhoit dragged Plaintiff K.Y. out of the vehicle and slammed him face down on the hood of the Cruiser and placed him in handcuffs. [*Id.* at ¶¶ 110-11]. After reviewing Defendants' Motion for Summary Judgment and the evidence submitted in support thereof, it is noted that Plaintiff K.Y. and Plaintiff Keaton testified that Defendant Wilhoit never pulled his service revolver. [Doc. 81-8 at 16; Doc. 81-9 at 15]. In addition, Plaintiff K.Y. testified that Defendant Wilhoit opened the door, handcuffed him, and put him on Defendant Wilhoit's Cruiser. [Doc. 81-9 at 17]. Plaintiff K.Y. testified that he did not have any injuries from Defendant Wilhoit handcuffing him, neither his (Plaintiff K.Y.'s) head nor face hit the hood, and

Defendant Wilhoit did not use unnecessary force against him. [*Id*. at 17-20]. Thus, in light of this testimony, it is not clear to the Court what information Plaintiffs intend to illicit from Defendant Wilhoit on the excessive force claim as to Plaintiff K.Y. Stated in a different way, Plaintiffs have not explained what material facts they hope to uncover with the proposed depositions.

Further, in their brief, Plaintiffs state that they have alleged in this case that Defendant Wilhoit acted without probable cause in making an arrest. Again, Plaintiffs do not explain what specific information they seek from Defendant Wilhoit or what they hope to uncover from his deposition. Later, in their brief, Plaintiffs state that according to Officer Greene, a traffic citation should have been written as opposed to an arrest of Plaintiff Howard Yost. There is no dispute in this case that Defendant Wilhoit charged Plaintiff Howard Yost with reckless endangerment and felony evading arrest, which according to Defendants, was based on Defendant Wilhoit's observation that Plaintiff Howard Yost was driving at a high rate of speed and ran a stop sign in an apparent attempt to evade him. [Doc. 82 at 1-2.]; *see also* [Doc. 81-5 at ¶ 3] (Affidavit of Wayne Wilhoit). Defendants claim that Defendant Wilhoit activated his lights and sirens to initiate the pursuit, but Plaintiff Howard Yost fled. [*Id.*].[5] Plaintiffs have not explained how the deposition of Officer Greene, who was not present when Defendant Wilhoit allegedly observed the traffic violations and attempt at evasion, is necessary to respond to the Motion for Summary Judgment.

Finally, Plaintiffs generally state that they need discovery regarding Defendant Wilhoit's training and the "training, policies, etc.," of the Greene County Sheriff's Department pursuant to *Monell*. During the previous telephone conference, Plaintiffs indicated that they need discovery to frame the issue of qualified immunity. Municipalities are not entitled to qualified immunity.

---

[5] The Court does not have complete transcripts from Plaintiffs' depositions, but at least one Plaintiff (Plaintiff K.Y.) has denied that Defendant Wilhoit activated his blue lights and siren. [Doc. 81-3 at 2].

21

*See Nichols v. Knox Cty., TN*, No. 3:11-CV-417, 2013 WL 12214450, at *2 (E.D. Tenn. Oct. 9, 2013) ("Knox County has not cited the Court to any case law supporting its argument that a stay of discovery based upon qualified immunity should be afforded to the County—despite the defense of qualified immunity not being available to the County."). In any event, however, the Court has considered Plaintiffs' request for discovery regarding Defendant Wilhoit's training and the Sheriff Department's training and policies, despite the expiration of the discovery deadline. The Court finds, however, that Plaintiffs' Rule 56(d) motion requesting discovery on these matters suffers from the same deficiencies as above.

For instance, in order to establish *Monell* liability, Plaintiffs "must point to a municipal 'policy or custom' and show that it was the 'moving force' behind the constitutional violation." *Crabbs v. Scott*, 800 F. App'x 332, 336 (6th Cir. 2020). In Defendants' Motion for Summary Judgment, they argue that during Plaintiffs' depositions, Plaintiffs were not able to identify any policy or custom of Greene County. In addition, Defendants argue that Plaintiffs have not presented any proof that Defendant Wilhoit was inadequately trained, and Defendants submit evidence of Defendant Wilhoit's career history.

The Court observes that Count IV of the Complaint is this case alleges violations of 42 U.S.C. § 1983 for the deliberate indifference to policies, practices, customs but does not identify any specific policy, practice, custom. [Doc. 1 at 20]. As mentioned above, Plaintiffs state that they need discovery on the "training, policies, etc." of the Greene County Sheriff's Department, but the Court finds this assertion is insufficient under Rule 56(d). Further, in their Complaint, Plaintiffs allege that Defendants disregarded state law with respect to the standards for hiring, supervising, retaining, and training school resource officers and that Defendant Wilhoit was not qualified for his position. [*Id.* at 20-21]. It is not clear what state law Plaintiffs are referring to,

but in any event, Defendant Wilhoit has responded to discovery regarding his training and career in law enforcement. *See* [Doc. 81-2]. Plaintiffs do not explain what additional information they hope to uncover.

In light of these deficiencies, the Court declines to allow these depositions. Accordingly, even if the discovery deadline had not expired, the Court finds that Plaintiffs have not established their burden in showing why the requested discovery is necessary to respond to Defendants' Motion for Summary Judgment. The Court hereby **ORDERS** Plaintiffs to respond to Defendants' Motion for Summary Judgment on or before **August 6, 2021.**

> **C.** **Plaintiffs' Motion to Dismiss, Set Aside and/or Stay Defendants' Motion for Dismiss for Failure to Prosecute; Motion for Status Conference, and Motion for Entry of Revised Scheduling Order**

As an initial matter, the Court has already addressed Defendants' Motion to Dismiss, and the Court has previously set status conferences in this matter. Therefore, those requests are now moot. Plaintiffs also seek a revised Scheduling Order, which sets new deadlines for discovery, dispositive motions, responses to dispositive motions, and any other pre-trial deadline dates the Court deems necessary.

Defendants object to a new Scheduling Order [Doc. 99]. Defendants argue that the deadlines in this case have long passed and that Plaintiffs failed to comply with any of them. Defendants argue that Plaintiffs had years to depose witnesses before the dispositive motion deadline and chose not to do so. Defendants insist that a new Scheduling Order would be inherently unfair to them. Defendants argue that they timely filed their Motion for Summary Judgment and that there is no justification for delay in ruling on the motion, especially given that Defendants have raised qualified immunity.

For the reasons discussed above, the Court will enter an amended Scheduling Order resetting the deadlines for final witness lists, pretrial disclosures, jury instructions, and motions in limine. Further, as ordered above, Plaintiffs shall respond to Defendants' Motion for Summary Judgment on or before August 6, 2021. The remaining deadlines will not be revisited.

## III.     CONCLUSION

Accordingly, for the reasons set forth below, the Court **DENIES** Defendants' Motion to Dismiss [**Doc. 88**], **GRANTS** Plaintiffs' Motion to Modify [**Doc. 91**], and **GRANTS IN PART** Plaintiffs' Motion for Entry of Revised Scheduling Order [**Doc. 97**]. The Court will enter an amended Scheduling Order setting forth new deadlines as explained above.

ENTER:

Debra C. Poplin
United States Magistrate Judge